UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| OLD DOMINION ELECTRIC COOPERATIVE,<br><br>       *Plaintiff*,<br><br>v.<br><br>PJM INTERCONNECTION, L.L.C.,<br><br>       *Defendant*. | Civil Action No. **3:19-cv-00233-MHL**<br><br>Removed from Circuit Court for the County of Henrico, Case No. CL18-3486 |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1446, Defendant PJM Interconnection L.L.C. ("PJM"), by counsel, hereby removes the above-captioned action from the Circuit Court for the County of Henrico, Virginia, to this Court. As explained below, this Court has federal-question jurisdiction over this action under § 1331 because all of the claims in the amended complaint are federal in nature, arise under federal law, necessarily raise substantial and disputed questions of federal law, and/or have been entirely supplanted by federal law. Even if only some of the claims were federal, this Court would have supplemental jurisdiction because every claim arises from a common nucleus of operative facts. 28 U.S.C. § 1367.

### I. PROCEDURAL COMPLIANCE

1. This action was pending before the Circuit Court for the County of Henrico, Virginia, case number CL18-3486. This action is appropriately removed to this Court as the United States District Court for the district and division embracing the place where the original action was filed. *See* 28 U.S.C. § 1446(a).

2. Old Dominion Electric Cooperative ("ODEC") served the amended complaint on PJM on March 15, 2019. No other pleading or summons in this action had previously been served on PJM. Accordingly, this Notice is timely filed within thirty days after the date on which PJM received an initial pleading in this action. *See* 28 U.S.C. § 1446(b)(1). PJM has not yet answered or otherwise responded to the complaint. Nor has the time to do so expired.

3. Pursuant to 28 U.S.C. § 1446(a), PJM has attached as **Exhibit A** a copy of "all process, pleadings, and orders served upon" it so far in this action—namely, the amended complaint. Copies of all other documents filed on the state-court docket, though not served on PJM, are attached as **Exhibit B**.

4. A copy of this Notice and written notification of its filing will be served on all parties of record promptly and will be contemporaneously filed with the Clerk of the Circuit Court for the County of Henrico. *See* 28 U.S.C. § 1446(d).

## II. BACKGROUND

5. In the 1990s, the Federal Energy Regulatory Commission ("FERC") exercised its exclusive authority over the sale and transmission of wholesale power to encourage the restructuring of electricity markets. *See Midwest ISO Transmission Owners v. FERC*, 373 F.3d 1361, 1361-65 (D.C. Cir. 2004) (Roberts, J.). Under that new structure, the electricity "grid" that transmits wholesale power is operated on a non-discriminatory basis by regional transmission organizations ("RTOs") created by the owners of transmission lines. *Id.* at 1364.

6. PJM is the "regional transmission organization and independent system operator" for the "PJM Region," which "encompasses all or parts of thirteen states in the Mid-Atlantic region of the United States, including Virginia, and the District of Columbia." Am.

Compl. ¶¶5, 9.[1]  As such, PJM "has broad responsibility relating to the supply of wholesale electric power throughout the PJM Region," including "ensuring that at all times sufficient electric power is available to meet customer demands." *Id.* ¶¶7, 8.  PJM "exercises operational control over . . . the electrical transmission facilities belonging to its participating members." *Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1227 (D.C. Cir. 2018) ("*ODEC III*"), *cert. denied* 139 S. Ct. 794 (2019).  It also "operates both energy and capacity markets." *PPL EnergyPlus, LLC v. Nazarian*, 753 F.3d 467, 472 (4th Cir. 2014), *aff'd sub nom. Hughes v. Talen Energy Mktg., LLC*, 136 S. Ct. 1288 (2016).  "The energy market is essentially a real-time market that enables PJM to buy and sell electricity to distributors for delivery within the next hour or 24 hours." *Id.*  "The capacity market is a forward-looking market" that ensures electricity can be made available for purchase when needed "in the future." *Id.*

7. ODEC is a "wholesale energy generation and transmission utility aggregation cooperative" that "supplies wholesale electric power" to its members.  Am. Compl. ¶¶1, 2.  ODEC alleges that it has agents in North Carolina and that those agents coordinated with PJM regarding the delivery of wholesale electricity outside of that State, including in Virginia.  *See, e.g.*, *id.* ¶¶6, 12, 23.  Those activities relating to the interstate provision of wholesale electricity form the basis of this action.

8. PJM's role as an RTO and ODEC's role as a utility are defined by the Federal Power Act and FERC rules and regulations.  Pursuant to those rules and regulations, PJM has filed and FERC has approved the PJM Open Access Transmission Tariff (the "Tariff") and PJM Operating Agreement, which provide the terms and conditions governing PJM's interconnection

---

[1] For purposes of this Notice, PJM assumes but does not admit the truth of the amended complaint's factual allegations.

and energy-market system. *See ODEC III*, 892 F.3d at 1227; *see also* 16 U.S.C. § 824a(a); *Hughes v. Talen Energy Mktg., LLC*, 136 S. Ct. 1288, 1292-93 (2016).

9. The Tariff and Operating Agreement carry the force of federal regulations. *See Bryan v. BellSouth Commc'ns, Inc.*, 377 F.3d 424, 429 (4th Cir. 2004) ("*Bryan I*"), *cert. denied* 543 U.S. 1187 (2005); *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 839, *amended on denial of reh'g*, 387 F.3d 966 (9th Cir. 2004). They also define "the entire contractual relation" between PJM and its members, including ODEC, as to the provision of wholesale electricity. *Cahnmann v. Sprint Corp.*, 133 F.3d 484, 489 (7th Cir. 1998), *cert. denied* 524 U.S. 952 (1998). The Tariff and Operating Agreement thus "'*conclusively and exclusively* enumerate the rights and liabilities of the contracting parties.'" *Marcus v. AT&T Corp.*, 138 F.3d 46, 56 (2d Cir. 1998); *see Indeck Maine Energy, L.L.C. v. ISO New England Inc.*, 167 F. Supp. 2d 675, 687-90 (D. Del. 2001) (noting "the similarity between telephone and utility regulation" and applying *Cahnmann* and *Marcus* in the FERC utility-regulation context).

10. Pursuant to the Tariff and Operating Agreement, PJM works with generators and public load-serving utilities, including ODEC, to ensure the market can "meet customer demands" for electricity. Am. Compl. ¶ 8. Utilities bid to meet that demand through competitive auctions. *ODEC III*, 892 F.3d at 1227. Those auctions are governed by federal law, including the Tariff. For example, the Tariff sets a cap on the prices at which generators may offer their capacity to PJM in the energy market. *See id.* at 1228.

11. Some utilities are "generation capacity resources." *ODEC III*, 892 F.3d at 1227. Capacity is the capability to provide electricity when needed, rather than the electricity itself. Under the Tariff and Operating Agreement, generation capacity resources must "generate electricity whenever called upon by PJM." *Id.* During the period relevant here, ODEC's

4

facilities were generation capacity resources. *Id.* For that reason, ODEC alleges that, if it were not able to deliver energy when requested by PJM, it would be "deemed to . . . experience[ ] a forced outage and would . . . incur[ ] a monetary penalty" under the Tariff. Am. Compl. ¶ 50.

12. In January 2014, there was a "Polar Vortex Event" in the areas of the country where PJM and ODEC operate. Am. Compl. ¶ 15. Extreme cold caused demand for electricity to spike. *Id.* ¶¶ 15, 17. Exercising its responsibility under the Tariff and FERC regulations to "maintain [system] reliability," PJM took steps to "ensure the supply of sufficient power generation resources" to meet the increased demand. *Id.* ¶ 17; *see generally* 18 C.F.R. § 35.34. The amended complaint alleges that PJM, among other things, requested that certain ODEC generation units be available to generate electricity at various times, *see* Am. Compl. ¶¶ 23, 27, 34, 37, 41, consistent with those units' obligations as generation capacity resources to supply energy when called upon by PJM. ODEC alleges that in doing so PJM "induced" it to "purchase natural gas to run its units." *Id.* ¶ 18. ODEC alleges that it "agreed, complied with PJM's requests, and incurred significant costs" to prepare its units. *Id.* ¶ 19.

13. The amended complaint alleges that demand ultimately was not as high as anticipated. Consequently, ODEC alleges, PJM did not dispatch (*i.e.*, direct to operate) some of ODEC's units, while other units were dispatched for shorter periods than originally projected. Am. Compl. ¶¶ 25, 29, 32, 39, 42. ODEC alleges it "incurred operational and fuel costs" as a result. *Id.* ¶¶ 26, 30, 33, 36, 40, 43. ODEC also allegedly "incurred operational and fuel costs" for generation units that ran as scheduled. *Id.* ¶¶ 34-36. Some of those costs were allegedly due to an increase in the market price of natural gas to "3,330 percent higher than it had been before the Polar Vortex Event." *Id.* ¶ 45.

14. In June 2014, ODEC sought relief from FERC for the "natural gas-related costs that ODEC states it incurred as a result of its efforts to meet PJM's commitment of ODEC's Generation Capacity Resources during the cold weather events of January 2014." *Old Dominion Elec. Coop.*, 151 FERC ¶61,207, at 62285 (June 9, 2015) ("*ODEC I*"), *reh'g denied* 154 FERC ¶61,155 (Mar. 1, 2016) ("*ODEC II*"). ODEC could not recover those costs, however, unless FERC granted it "a waiver of certain provisions of PJM's [Tariff] and Operating Agreement" that precluded PJM from paying ODEC. *Id.*

15. Before FERC, ODEC identified three "categories of costs" for which it sought reimbursement: "(1) actual costs greater than [the Tariff's cap on rates] incurred for running units according to PJM dispatch instructions . . . ; (2) costs incurred for natural gas purchased but not burned for units PJM committed but did not dispatch . . . ; and (3) costs incurred for natural gas purchased but not burned due to PJM's curtailment of a dispatch period." *ODEC I*, 151 FERC ¶61,207, at 62285. ODEC based its requests for relief on the argument that it was acting at PJM's request, following its instructions and assurances with the understanding that it would be "made whole" afterwards. *Id.*

16. FERC denied relief and denied rehearing, concluding that it could not grant ODEC's requested waiver: Federal law, it held, bars retroactively changing Tariff-set rates, as would be required to pay ODEC. *See ODEC I*, 151 FERC ¶61,207, at 62294; *ODEC II*, 154 FERC ¶61,155. In so ruling, FERC noted that "there was no contract between ODEC and PJM providing for ODEC's recovery of the costs at issue," and that PJM's "generally applicable tariffs" could not in any event be modified "through a bilateral contract with a single generator" or any other "informal, private agreement." *ODEC II*, 154 FERC ¶61,155, para. 22. The D.C. Circuit denied ODEC's petition for review, agreeing with FERC that granting ODEC's request

would violate federal law. *ODEC III*, 892 F.3d at 1230-31. The Supreme Court denied ODEC's petition for certiorari on January 7, 2019. 139 S. Ct. 794 (2019).

17. ODEC commenced this action in the Circuit Court for the County of Henrico, Virginia, on June 5, 2018, but it served no pleading on PJM. On February 22, 2019, ODEC filed a motion to file an amended complaint, which the court granted by order on February 27, 2019. Neither the motion nor the order was served on PJM. On March 15, 2019, ODEC served the amended complaint on PJM.

18. The amended complaint asserts four claims, all based on a common nucleus of operative facts (indeed, the same facts alleged in ODEC's FERC petition). The amended complaint alleges that "PJM induced ODEC to enter into binding commitments to purchase natural gas to run its units" by "promising to make ODEC whole for its fuel and other costs associated with purchasing the natural gas." Am. Compl. ¶ 18. Based on that alleged promise and breach thereof, ODEC asserts purported state-law causes of action for breach of contract, breach of several separate contracts, unjust enrichment, and negligent misrepresentation. *Id.* ¶¶ 53-76. ODEC seeks $14,925,669.58 in damages—the same sum it previously sought in its failed FERC petition. *Compare id.* at 12 *with ODEC I*, 151 FERC ¶ 61,207 at 62285.

### III. GROUNDS FOR REMOVAL

19. Removal is proper under 28 U.S.C. § 1441 because this civil action "aris[es] under the . . . laws . . . of the United States," 28 U.S.C. § 1331—namely, the Federal Power Act, the Tariff, the Operating Agreement, and related federal doctrines. *See Bryan I*, 377 F.3d at 429 ("[A] filed tariff carries the force of federal law."). Those federal authorities govern "the terms of the relationship" between ODEC and PJM, and each of ODEC's claims seeks to enforce, challenge, and/or alter those terms. *Id.* at 429. The principle "that suits to enforce or invalidate tariffs arise under federal law is beyond dispute." *Id.* at 429 n.6. "A claim that seeks to alter

the terms of [a] relationship . . . set forth in a filed tariff therefore presents a federal question." *Id.* at 429; *see Jacquet v. Dominion Transmission, Inc.*, No. CIV.A. 2:05-0548, 2010 WL 5487248, at *8-10 (S.D.W. Va. Dec. 30, 2010) (removal proper where complaint challenged FERC-approved tariffs); *Indeck Maine Energy*, 167 F. Supp. 2d at 690 (removal proper where a complaint "present[s] a challenge to a federally-approved tariff [approved under the Federal Power Act] in the guise of a state contractual claim").

20.  The amended complaint also arises under federal law because it demands payment from PJM for wholesale electricity products at payment levels different from those set forth by the Tariff. Such a demand seeks "to alter [a] rate" set by the Tariff and to recover "damages that would effectively impose a rate different from that dictated by the tariff," both of which present federal questions. *Bryan I*, 377 F.3d at 430, 432; *see also Bryan v. BellSouth Commc'ns, Inc.*, 492 F.3d 231, 237-38 (4th Cir. 2007) ("*Bryan II*"), *cert. denied* 552 U.S. 1097 (2008) (*Bryan I* rested on "the *legal effect* of challenging or seeking to change the terms of [a] tariff" and held "the nature of the damages sought . . . was key"). Indeed, ODEC seeks to recover as damages precisely the same sum ($14,925,669.58) FERC held it could *not* recover in light of the Tariff. *See* Am. Compl. 12; *ODEC I*, 151 FERC ¶ 61,207 at 62285.

21.  ODEC's assertion that the agreements it alleges were "outside the scope of" and "outside of the requirements, restrictions and protections set forth in any tariff or other regulated PJM policy or process" does not deprive this Court of jurisdiction. Am. Compl. ¶¶ 48-49. FERC has exclusive regulatory authority over the sale of wholesale electricity products, including capacity and auxiliary services. 16 U.S.C. § 824(b)(1); *see Hughes*, 136 S. Ct. at 1292. As a matter of law, the FERC-approved Tariff and Operating Agreement define the "entire contractual relation" between PJM and its utilities, including ODEC, as to the provision

of wholesale electricity. *Cahnmann*, 133 F.3d at 489; *see Marcus*, 138 F.3d at 56; *Indeck Maine Energy*, 167 F. Supp. 2d at 690. ODEC's attempt at "artful pleading" does not change that its claims necessarily arise under, and are inextricably intertwined with, the Federal Power Act, the Tariff, the Operating Agreement, and related doctrines. *Indeck Main Energy*, 167 F. Supp. 2d at 685 (citing 14B Wright, Miller & Cooper, Federal Practice and Procedure § 3722 at 436 (3d ed. 1998)). Each claim, moreover, necessarily raises substantial and disputed questions of federal law and has been entirely supplanted by federal law. ODEC may not avoid federal-question jurisdiction or removal by dressing its federal claims in state-law clothing. *See, e.g.*, *Bryan I*, 377 F.3d at 432; *Marcus*, 138 F.3d at 55; *Jacquet*, 2010 WL 5487248, at *10; *Indeck Maine Energy*, 167 F. Supp. 2d at 690.

22. Each claim necessarily presents the question whether ODEC is entitled to compensation or indemnification for relying on PJM's alleged instructions in the course of its duties under the Federal Power Act and the Tariff and the Operating Agreement, which carry "the force of federal law." *Bryan I*, 377 F.3d at 429. The claims thus "require recourse to federal law" and arise under it. *Burrell v. Bayer Corp.*, --- F.3d. ----, No. 17-1715, 2019 WL 1186722, at *6 (4th Cir. Mar. 14, 2019). ODEC's purported contract claims are premised on the theory that the promises allegedly exchanged with PJM created "binding commitments" regarding the provision of and payment for electricity products in a wholesale market. *See, e.g.*, Am. Compl. ¶ 18. Those commitments cannot be assessed or enforced without reference to the Tariff and Operating Agreement, which " '*conclusively and exclusively* enumerate the rights and liabilities of the contracting parties.' " *Marcus*, 138 F.3d at 56; *see also Cahnmann*, 133 F.3d at 488-89; *Indeck Maine Energy*, 167 F. Supp. 2d at 690. ODEC's contract claims are thus removable. *See Bryan I*, 377 F.3d at 431; *Indeck Maine Energy*, 167 F. Supp. 2d at 690.

9

23. The Tariff and Operating Agreement also control when and how PJM may give directives to ODEC, as well as if and when ODEC may be indemnified for costs incurred as a result of following those directives. *See Duke Energy Corp.*, 151 FERC ¶ 61,206, at 62279-80 (June 9, 2015), *petition for review denied*, *Duke Energy Corp. v. FERC*, 892 F.3d 416, 422 (D.C. Cir. 2018). They are necessary to ODEC's claims because ODEC can obtain the relief sought in the amended complaint only under the Tariff and Operating Agreement—*i.e.*, under federal law. *See Bryan I*, 377 F.3d at 431.

24. ODEC's request for payment, moreover, constitutes "an action seeking to alter" or to challenge as unfair the maximum rates permitted by the Tariff. *Bryan I*, 377 F.3d at 432; *see Bryan II*, 492 F.3d at 237-38. ODEC's unjust-enrichment claim also amounts to a challenge to the fairness of the terms of the Tariff and Operating Agreement that dictated the result of ODEC's failed FERC Petition. Such challenges necessarily raise federal questions. *See Bryan I*, 377 F.3d at 432; *see also* 16 U.S.C. § 824e; *Duke Energy Corp.*, 151 FERC ¶ 61,206, at 62268.

25. The federal issues underlying ODEC's claims are substantial, disputed, and may be entertained in a federal forum "without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005); *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004). A federal question is "substantial" when it is important " 'to the federal system as a whole.' " *Burrell*, 2019 WL 1186722, at *4. ODEC itself acknowledges that the resolution of its claims could have "staggering" "practical and public policy implications" because of their interaction with the "electric power systems throughout the Mid-Atlantic region." Am. Compl. ¶ 22. Those systems are governed and controlled by federal law, making the resolution of the

related federal-law issues substantial. The Federal Power Act, *e.g.*, 16 U.S.C. §§ 824, 824a, 825p, also shows that the required "reference to [and] interpretation of federal law" in this case—including as to the Tariff and Operating Agreement—raises substantial federal questions. *Hendricks v. Dynegy Power Mktg., Inc.*, 160 F. Supp. 2d 1155, 1161 (S.D. Cal. 2001); *see also Franklin v. City of Alexandria*, No. CIV.A. 07-1011, 2007 WL 3023941, at *2 (W.D. La. Sept. 17, 2007); *N.Y. State Elec. & Gas Corp. v. N.Y. Indep. Sys. Operator, Inc.*, No. CIV.00-CV-1526HGMGJD, 2001 WL 34084006, at *6 (N.D.N.Y. Jan. 19, 2001).

26. The substantial federal questions necessarily raised by the amended complaint are "'actually disputed.'" *Burrell*, 2019 WL 1186722, at *4. ODEC's position that it is entitled to compensation and indemnification for the costs it seeks is contrary to PJM's (and FERC's, and the D.C. Circuit's) interpretation of the Tariff, Operating Agreement, Federal Power Act, and related federal doctrines.

27. Congress has assigned the entire wholesale energy space to the federal system and specifically provided for exclusive federal jurisdiction. *See* 16 U.S.C. §§ 824(b), 825p. It is therefore appropriate for federal courts to resolve the federal questions presented here. *See Grable*, 545 U.S. at 319-20.

28. Congress has also foreclosed state-law remedies for claims like ODEC's in favor of exclusive federal ones. The claims here should have been brought in federal court—and in substance were, on review of a FERC ruling refusing to authorize a departure from the Tariff. *See ODEC III*, 892 F.3d at 1226. The claims necessarily implicate and arise from federal regulations regarding the "transmission of electric energy in interstate commerce" and the "sale of electric energy at wholesale in interstate commerce," areas that Congress removed from state regulation. 16 U.S.C. § 824(b). The Federal Power Act provides numerous and exclusive

methods through which parties like ODEC may seek to enforce, challenge, or be excused from the Federal Power Act, Tariff, and/or Operating Agreement. *See, e.g.*, 16 U.S.C. §§ 824(b), 824d(a), 824d(d), 824e(a), 825*l*, 825p. Permitting this action to proceed under state law would "usurp [FERC's] authority to determine what rate is reasonable." *Bryan I*, 377 F.3d at 430. ODEC cannot circumvent the Federal Power Act's exclusive methodology for rate changes, including the very system for requesting waivers that ODEC has already employed, by asserting state-law claims. *See* 16 U.S.C. § 824d(d). Federal law provides ODEC's exclusive remedies, leaving no room for state analogues.

29. To the extent that ODEC's claims seek "to enforce [a] liability or duty created by" the Federal Power Act, the Tariff, or the Operating Agreement, the claims arise under federal law and exclusively within federal jurisdiction, providing grounds for removal. 16 U.S.C. § 825p; *see Hendricks*, 160 F. Supp. 2d at 1161 (holding that removal is proper where claims "fall[ ] within the express terms of a statute granting . . . exclusive jurisdiction over the subject matter of the claim").

30. Finally, in the event that this Court later finds that some but not all of the claims arise under federal law pursuant to § 1331, this Court has supplemental jurisdiction over any non-federal claim because every claim in the amended complaint shares a common nucleus of operative facts. 28 U.S.C. § 1367.

## IV. CONCLUSION

31. This action is hereby removed from the Circuit Court for the County of Henrico, Virginia, case number CL18-3486, to the United States District Court for the Eastern District of Virginia, Richmond Division.

Dated: April 3, 2019

/s/ Robert M. Rolfe

Robert M. Rolfe (VSB #15779)
Brian A. Wright (VSB #82827)
HUNTON ANDREWS KURTH LLP
951 E. Byrd Street
Riverfront Plaza, East Tower
Richmond, Virginia 23219
Tel: (804) 788-8200
Fax: (804) 788-8218
rrolfe@huntonak.com
wrightb@huntonak.com

*Counsel for PJM Interconnection, LLC*

13

**Certificate of Service**

I hereby certify that, on April 3, 2019, I caused a true and correct copy of Defendant's Notice of Removal to be served on the following by hand delivery:

>James Patrick Guy II
>Andrew K. Clark
>C. Mitch Burton, Jr.
>LECLAIRRYAN, PLLC
>919 E. Main Street, 24th Floor
>Richmond, Virginia 23219
>james.guy@leclairryan.com
>andrew.clark@leclarirryan.com
>mitch.burton@leclairryan.com
>
>*Attorneys for Old Dominion Electric Cooperative*
>
>
>　　　/s/ Robert M. Rolfe
>
>Robert M. Rolfe (VSB #15779)
>Brian A. Wright (VSB #82827)
>HUNTON ANDREWS KURTH LLP
>951 E. Byrd Street
>Riverfront Plaza, East Tower
>Richmond, Virginia 23219
>Tel:  (804) 788-8200
>Fax: (804) 788-8218
>rrolfe@huntonak.com
>wrightb@huntonak.com
>
>*Counsel for PJM Interconnection, LLC*

14